**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TODD GREENBAUM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ARBOR REALTY TRUST, INC., IVAN KAUFMAN, and PAUL ELENIO,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Todd Greenbaum ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Arbor Realty Trust, Inc. ("Arbor Realty" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Arbor Realty; and (c) review of other publicly available information concerning Arbor Realty.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a class action on behalf of persons and entities that purchased or otherwise acquired Arbor Realty securities between February 27, 2026 and October 30, 2026, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2. Arbor Realty is a nationwide real estate investment trust and direct lender providing bridge, construction, mezzanine and preferred equity financing for multifamily, single-family rental and other commercial real estate properties.

3. As the Company entered fiscal year 2026, Arbor Realty claimed that it had "ring-fenced the majority of [its] nonperforming and subperforming loans," meaning that problem loans were confined to an identified pool of loans. The Company claimed to have "clear visibility" to resolving "nearly all of [its] delinquencies by year end" in part by taking back large swathes of property as Real Estate Owned ("REO"), which it could then sell to ultimately reduce its REO balance.

4. The truth began to emerge on May 8, 2026, before the market opened, when the Company issued a press release announcing first quarter 2026 results, including net income for the quarter of $0.6 million, compared to net income of $30.4 million for the same quarter in the prior year. The Company had 19 non-performing loans with an unpaid principal balance ("UPB") of $481.5 million, before related loan loss reserves of $16.1 million, compared to 26 non-performing loans with a UPB of $569.1 million, before related loan loss reserves of $10.2 million as of December 31, 2025. During the related conference call held the same day, the Company's Chief Executive Officer ("CEO"), Ivan Kaufman ("Kaufman"), stated the Company was "***pushing our timetable out a little bit***" to resolving nonperforming and subperforming loans.[1] Further, the Company's Chief Financial Officer ("CFO"), Paul Elenio ("Elenio"), purported to reassure investors that the Company maintained its "***expectation that we will resolve the bulk of our delinquent loans by the end of the year.***" Elenio stated, "This should put our REO assets between $250 million and $300 million by the end of '26 and greatly improve our run rate of income for the future."

5. On this news, Arbor Realty stock fell $0.96, or 11.75%, to close at $7.21 on May 8, 2026, on unusually heavy trading volume.

6. Then, on October 30, 2026, before the market opened, Arbor Realty issued a press release announcing its financial results for the third quarter of 2026. Among other things, the Company reported a GAAP net loss of $(85.4) million and that the Company would suspend its quarterly cash dividend. The Company revealed the number of nonperforming loans had increased from 19 to 32 and they had a UPB of $647.6 million, before related loan loss reserves of $41.9

[1] Unless otherwise stated, all emphasis in bold and italics hereinafter is added, and all footnotes are omitted.

million. During the related earnings call, Defendant Kaufman disclosed the Company "***ended the third quarter with approximately $750 million of delinquencies and around $500 million of REO assets for total nonperforming assets of roughly $1.25 billion, which is up around $200 million from last quarter's numbers.***"

7. On this news, Arbor Realty stock fell $0.88, or 29.14%, to close at $2.14 on October 30, 2026, on unusually heavy trading volume.

8. Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors that: (1) the loans Defendants described as "ring-fenced" were not contained; (2) the Company lacked a reasonable basis to represent that the Company would resolve nearly all existing delinquencies by year-end 2026; (3) the Company could not reasonably reduce its REO balance at the pace predicted by year-end 2026; (4) the resulting losses, reserves, and impairments threatened the Company's earnings and its ability to sustain its dividend; and (5) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

9. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

11. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

12. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are in this District.

13. In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

**PARTIES**

14. Plaintiff Todd Greenbaum, as set forth in the accompanying certification, incorporated by reference herein, purchased Arbor Realty securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

15. Defendant Arbor Realty is incorporated under the laws of Maryland with its principal executive offices located in Uniondale, New York. Arbor Realty's common stock trades on the New York Stock Exchange ("NYSE") under the symbol "ABR."

16. Defendant Kaufman was the Company's CEO at all relevant times.

17. Defendant Elenio was the Company's CFO at all relevant times.

18. Defendants Kaufman and Elenio (together, the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of

the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

19. Arbor Realty is a nationwide real estate investment trust and direct lender providing bridge, construction, mezzanine and preferred equity financing for multifamily, single-family rental and other commercial real estate properties.

### Materially False and Misleading Statements Issued During the Class Period

20. The Class Period begins on February 27, 2026. On that day, Arbor Realty issued a press release announcing its earnings for the fourth quarter and full year ended December 31, 2025. The press release touted the Company's financial results, including the Company's loan and investment portfolio's unpaid principal balance and the number of non-performing loans. Specifically, the press release stated as follows in relevant part:

**Full Year Highlights:**

GAAP net income of $0.56 per diluted common share

> Distributable earnings[1] of $1.07, or $1.17 per diluted common share, excluding $22.6 million of net realized losses from the resolution of certain legacy assets previously reserved for
>
> Agency servicing portfolio of ~$36.20 billion on growth of 8% from loan originations of $5.07 billion
>
> Structured portfolio of $12.11 billion on growth of 7% from loan originations of $3.52 billion
>
> * * *
>
> Generated significant liquidity through improvements to the right side of our balance sheet:
>
> Issued $900.0 million of senior unsecured notes to repay $557.5 million of unsecured debt and add ~$340 million of liquidity
>
> Unwound three CLO vehicles, financing assets with a new $1.15 billion repurchase facility and existing lines, enhancing leverage, reducing pricing and generating ~$170 million of liquidity
>
> * * *
>
> At December 31, 2025, the loan and investment portfolio's unpaid principal balance ("UPB"), excluding loan loss reserves, was $12.11 billion, with a weighted average current interest pay rate of 6.49%, compared to $11.71 billion and 6.64% at September 30, 2025. Including certain fees earned and costs associated with the loan and investment portfolio, the weighted average current interest pay rate was 7.08% at December 31, 2025, compared to 7.27% at September 30, 2025. The decrease in pay rate was largely due to an decrease in the SOFR rate in the fourth quarter of 2025.
>
> * * *
>
> The Company had twenty-six non-performing loans with a UPB of $569.1 million, before related loan loss reserves of $10.2 million, compared to twenty-five loans with a UPB of $566.1 million, before loan loss reserves of $22.9 million at September 30, 2025.

21. On February 27, 2026, the Company submitted its annual report for the fiscal year ended December 31, 2025 on a Form 10-K filed with the SEC (the "FY25 10-K"). The FY25 10-K affirmed the previously reported financial results. The FY25 10-K stated the following regarding non-performing loans and other non-accrual loans:

***Non-performing Loans***

Loans are generally classified as non-performing once the contractual payments exceed 60 days past due, unless past due payments due to us are in the process of being collected or otherwise reasonably certain to be received in the immediate future. Income from non-performing loans is generally recognized on a cash basis when it is received. Full income recognition will resume when the loan becomes contractually current, and performance has recommenced. At December 31, 2025, 26 loans with an aggregate net carrying value of $545.0 million, net of related loan loss reserves of $10.2 million, were classified as non-performing and, at December 31, 2024, 26 loans with an aggregate net carrying value of $598.9 million, net of related loan loss reserves of $23.8 million, were classified as non-performing.

A summary of our non-performing loans by asset class is as follows ($ in thousands):

| | December 31, 2025 | | December 31, 2024 | |
|---|---|---|---|---|
| | UPB | Carrying Value | UPB | Carrying Value |
| Multifamily | $ 566,906 | $ 553,016 | $ 649,227 | $ 620,072 |
| Commercial | 1,700 | 1,700 | 1,700 | 1,700 |
| Retail | 531 | 531 | 920 | 910 |
| Total | $ 569,137 | $ 555,247 | $ 651,847 | $ 622,682 |

At December 31, 2025, we had loans with a UPB of $237.0 million and accrued interest of $6.6 million that were greater than 60 days past due and classified as performing loans. Subsequent to December 31, 2025, all past due payments on these loans have been collected. At December 31, 2024, we had no loans contractually past due greater than 60 days that were still accruing interest.

***Other Non-accrual Loans***

In this challenging economic environment, we have been experiencing late and partial payments on certain loans in our structured portfolio. Therefore, for loans that are 60 days past due or less, if we have determined there is reasonable doubt about collectability of all principal and interest, we classify those loans as non-accrual and recognize interest income only when cash is received. The table below is a summary of those loans that are 60 days past due or less that we have classified as non-accrual, and changes to those loans for the periods presented ($ in thousands).

22. The FY25 10-K purported to warn of risks which "***could***" or "***may***" negatively impact the Company, including those related to "increases in loan loss reserves, delinquent and defaulted loans and other asset impairment charges" as follows in relevant part:

***An economic slowdown, a lengthy or severe recession, or declining real estate values could harm our operations.***

The risks associated with our business are more severe during periods of economic downturn, particularly if accompanied by declining real estate values. Declining real estate values limit our new mortgage loan originations, since borrowers often use increases in the value of their properties to support the purchase of additional properties and significantly increase the likelihood that we will incur losses on defaulted loans because the value of our collateral may be insufficient to repay the loan in full. Borrowers may also be less able to pay principal and interest on our loans if the economy weakens. Any sustained period of increased payment delinquencies, foreclosures and resulting losses could adversely affect our net interest income as well as our ability to originate, sell and securitize loans, which could significantly harm our results of operations, financial condition, business and our ability to make distributions to stockholders.

*   *   *

***Increases in loan loss reserves and other impairments are likely if economic conditions deteriorate.***

A decline in economic conditions could negatively impact the credit quality of our loan and investment portfolio and could cause us to experience increases in loan loss reserves, delinquent and defaulted loans and other asset impairment charges.

*   *   *

***Changes in interest rates could have an adverse effect on our operating results, financial condition, business prospects and our ability to make distributions to stockholders.***

Our financial performance is significantly influenced by movements in both short-term and long-term interest rates. Since the vast majority of our structured loan portfolio is floating rate based on the Secured Overnight Financing Rate ("SOFR") and a significant portion of our debt balances consist of fixed-rate instruments (such as convertible and senior unsecured notes), a rising interest rate environment generally has a positive impact on our net interest income from our structured loan portfolio. Furthermore, our earnings on escrows and cash balances also benefit from an elevated short-term rate environment. However, a prolonged period of elevated short and long-term interest rates may result in: (1) increased payment delinquencies and defaults; (2) increased loan modifications and foreclosures; (3) an increase in REO assets; (4) declining real estate values of certain asset classes; and (5) a dislocation in capital markets, all of which would adversely impact our results of operations, financial condition, business prospects and our ability to make distributions to our stockholders. Conversely, a high long-term interest rate environment would likely have an adverse impact on our fixed rate GSE/Agency business, as it will likely increase delinquencies and make it more costly for borrowers to refinance their balance sheet loans with fixed rate agency product.

23. On March 11, 2026, the Company published its fourth quarter and full year 2025 investor presentation. The investor presentation touted that Arbor "***has clear visibility to resolution on non-performing assets***" including that "***from 2Q26 – 4Q26, Arbor is projected to take back between $50M - $125M of non-performing loans (noted above) as REO assets***" and that it "***expect[s] to resolve between $350M - $400M of these assets during the year, which will bring the REO balance down to ~$300M by the end of 2026***." Specifically, the investor presentation stated as follows, in relevant part:




24. The above statements identified in ¶¶20-23 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) the loans Defendants described as "ring-fenced" were not contained, but continued to generate new delinquencies faster than the Company could resolve them; (2) the Company lacked a reasonable basis to represent that

the Company would resolve nearly all existing delinquencies by year-end 2026; (3) the Company could not reasonably reduce its REO balance at the pace predicted by year-end 2026; (4) the resulting losses, reserves, and impairments threatened the Company's earnings and its ability to sustain its dividend; and (5) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

25. The truth began to emerge on May 8, 2026, before the market opened, when the Company issued a press release announcing first quarter 2026 results, including net income for the quarter of $0.6 million, or $0.00 per diluted common share, compared to net income of $30.4 million, or $0.16 per diluted common share for the same quarter in the prior year. Distributable earnings for the quarter were $14.4 million, or $0.07 per diluted common share, compared to $57.3 million, or $0.28 per diluted common share for the same quarter in the prior year. Moreover, the Company reported problem loan resolutions had slowed and the Company took further losses and reserves, including that total allowance for loan losses was $131.2 million, the Company had nineteen non-performing loans with a UPB of $481.5 million, before related loan loss reserves of $16.1 million, and the Company recorded $12.5 million of impairments on six real estate owned properties. Specifically, the press release stated as follows in relevant part:

> **<u>Company Highlights:</u>**
>
> •GAAP net income of $0.6 million, or $0.00 per diluted common share
>
> •Distributable earnings1 of $0.07, or $0.18 per diluted common share, excluding $22.9 million of net realized losses from the resolution of certain legacy assets
>
> •Declares cash dividend on common stock of $0.17 per share
>
> •Servicing portfolio of ~$36.31 billion, agency loan originations of $707.6 million
>
> •Structured loan portfolio of ~$12.00 billion, originations of $767.6 million and runoff of $861.0 million

•Closed a $762.6 million collateralized securitization vehicle with enhanced leverage, generating ~$35 million of additional liquidity

•Purchased $30.7 million of stock at an average price of $7.46 per share, or 66% of book value

* * *

During the first quarter of 2026, the Company recorded a $3.6 million net provision for loan losses associated with CECL. At March 31, 2026, the Company's total allowance for loan losses was $131.2 million. The Company had nineteen non-performing loans with a UPB of $481.5 million, before related loan loss reserves of $16.1 million, compared to twenty-six non-performing loans with a UPB of $569.1 million, before loan loss reserves of $10.2 million at December 31, 2025. In addition, the Company recorded $12.5 million of impairments on six real estate owned properties.

At March 31, 2026, the Company had no loans that were less than 60 days past due classified as non-accrual, compared to three loans with a total UPB of $48.3 million at December 31, 2025.

During the first quarter of 2026, the Company modified 13 loans to borrowers experiencing financial difficulty with a total UPB of $478.8 million, the majority of which had borrowers investing additional capital to recapitalize their deals. In addition, of the total modified loans for the first quarter, $115.4 million were non-performing at December 31, 2025, and are now current in accordance with their modified terms.

The Company foreclosed on three loans with a UPB totaling $58.9 million, selling one of these foreclosed properties and one existing REO property for $33.0 million.

26. On the same day, the Company hosted an earnings call regarding its first quarter 2026 earnings. During the earnings call, Defendant Kaufman admitted "[u]nfortunately," the Company was "***pushing our timetable out a little bit***" for resolving non-performing and subperforming loans.

**Ivan Kaufman**

[…] On our last earnings call, we discussed at length we feel we are at the bottom of the cycle and have ring-fenced the majority of our nonperforming and subperforming loans and are working exceedingly hard at accelerating the resolution of these loans into performing assets, which will allow us to start to build back our run rate of interest and income for the future. This is our top priority as these loans are having a tremendous drag on our earnings. We also mentioned that

> if rates went down, the process would accelerate. And if rates increase, it would lead to a longer period of time needed to resolve these loans.
>
> Unfortunately, given the geopolitical landscape, the 5- and 10-year have actually increased roughly 50 basis points in the first quarter, which is certainly pushing our timetable out a little bit.

27. Nonetheless, Kaufman purported to assure investors that "we continue to make progress in working through our assets. And again, ***we believe we have a clear line of sight on resolving a bulk of these assets over the next several quarters***."

> Despite these challenges, we continue to make progress in working through our assets. And again, we believe we have a clear line of sight on resolving a bulk of these assets over the next several quarters. We ended the first quarter with approximately $500 million in delinquencies and around $500 million of REO assets for total nonperforming assets of roughly $1 billion. These numbers are down approximately $100 million from the last quarter or a 9% reduction. This is steady progress.
>
> And again, our goal is to continue to accelerate the resolution of our noninterest-earning assets and redeploy the capital into performing loans and grow our run rate of income. We had $200 million of new delinquencies in the first quarter and $300 million of resolutions, which is consistent with our goal of continuing to shrink our total delinquencies each quarter. Additionally, we have line of sight on roughly another $200 million to $300 million of delinquencies we expect to resolve in the second and third quarter in addition to another $100 million, we believe we have the potential to resolve by the end of the year.
>
> We also remain optimistic that we can reduce our REO assets to around $250 million to $300 million by the end of 2026, even after adding an additional $100 million of REO assets over the next few quarters, which were already reflected in our delinquency numbers at March 31. We have been actively marketing several of these assets for sale, which will go a long way towards helping reduce the drag on earnings and increase our run rate of income for the future. As we discussed in detail in our last quarter, we continue to focus heavily on our legacy portfolio, which currently sits at approximately $5 billion.

28. Further, during the first quarter 2026 earnings call, Defendant Elenio purported to reassure investors that the Company maintained its "e***xpectation that we will resolve the bulk of our delinquent loans by the end of the year.***" Elenio stated, "This should put our REO assets

between $250 million and $300 million by the end of '26 and greatly improve our run rate of income for the future."

> **Paul Elenio**
>
> […] We do expect this number to grow in the fourth quarter with further upside potential in 2027 as we're working diligently to resolve nearly all of our nonperforming assets over the next several quarters. We're estimating the second quarter will actually come in around $0.15 a share as there is roughly $0.02 a share of unusual drag from some inefficiencies related to our financing costs that are resulting in a temporary overlap of interest for a few months.
>
> This includes the $100 million ramp feature in our new CLO that we expect to be able to fully utilize by the end of May and the timing of redrawing on our repo lines to pay off our 4.5% unsecured notes last week as we use some of the proceeds from the December bond issuance to temporarily pay down higher cost repo debt until the April notes came due. And given the nonrecurring nature of this expense, combined with the expectation that we will resolve the bulk of our delinquent loans by the end of the year, we believe we'll be able to start to grow our earnings in the fourth quarter with additional upside expected in 2027 as well.
>
> * * *
>
> And again, we are working very diligently to dispose of these assets quickly with an estimated $100 million to $150 million of sales scheduled in the second quarter and another $200 million to $250 million expected in the third and fourth quarter. This should put our REO assets between $250 million and $300 million by the end of '26 and greatly improve our run rate of income for the future. We also booked another $9 million of specific reserves on our balance sheet loan book for total REO impairment and specific reserves of $21.5 million in the first quarter.

29. On this news, Arbor Realty stock fell $0.96, or 11.75%, to close at $7.21 on May 8, 2026, on unusually heavy trading volume.

30. On May 8, 2026, the Company published its first quarter 2026 investor presentation. The investor presentation touted that Arbor "***is Singularly Focused on Accelerating the Resolution of Non-Performing Assets***" and "***[c]ontinue[s] to make meaningful progress each quarter by resolving more non-interest earning assets versus new defaults.***" The investor presentation further reiterated that it "***has clear visibility to resolution on non-performing assets***" and further touted that "***Throughout the remainder of 2026, Arbor is projected to take back***

***~$100M of non-performing loans as REO assets, as well as work through any remaining delinquencies,*** " "***[t]his aggressive resolution pace will resolve nearly all of these delinquencies by year end,***" and the Company "expect[s] to resolve between $300M - $400M of these assets during the year, which will bring the REO balance down to $250M - $300M by the end of 2026." Specifically, the investor presentation stated as follows, in relevant part:

## Arbor is Singularly Focused on Accelerating the Resolution of Non-Performing Assets

**Continue to make meaningful progress each quarter by resolving more non-interest earning assets versus new defaults. In 1Q26, non-performing assets are down 10% as Arbor accelerates the resolution process**

**Non-Performing Assets - 2025-2026**
($ in 000s)

| Delinquency Rollforward | 2Q25 UPB | 2Q25 # | 3Q25 UPB | 3Q25 # | 4Q25 UPB | 4Q25 # | 1Q26 UPB | 1Q26 # |
|---|---|---|---|---|---|---|---|---|
| Beginning Balance | $ 653,911 | 28 | $ 528,700 | 22 | $ 749,250 | 33 | $ 617,448 | 29 |
| Additions | 89,634 | 4 | 435,103 | 18 | 270,710 | 9 | 197,775 | 5 |
| Transfer to REO | (110,502) | (5) | (122,475) | (2) | (88,168) | (4) | (58,925) | (3) |
| Modified/Payoffs | (104,343) | (5) | (92,078) | (5) | (314,344) | (9) | (274,848) | (12) |
| Ending Balance | $ 528,700 | 22 | $ 749,250 | 33 | $ 617,448 | 29 | $ 481,450 | 19 |

| REO Rollforward | 2Q25 Carrying Value | 2Q25 # | 3Q25 Carrying Value | 3Q25 # | 4Q25 Carrying Value | 4Q25 # | 1Q26 Carrying Value | 1Q26 # |
|---|---|---|---|---|---|---|---|---|
| Beginning Balance | $ 302,158 | 13 | $ 365,186 | 15 | $ 471,347 | 16 | $ 498,938 | 19 |
| Transfer to REO | 67,977 | 3 | 107,556 | 2 | 72,868 | 4 | 59,017 | 3 |
| Sold | (7,000) | (1) | (10,063) | (1) | (28,814) | (1) | (34,768) | (1) |
| Impairment | - | | - | | (20,500) | | (12,500) | |
| Other (CapEx / Depreciation) | 2,051 | | 8,668 | | 4,037 | | 10,079 | |
| Ending Balance | $ 365,186 | 15 | $ 471,347 | 16 | $ 498,938 | 19 | $ 520,766 [1] | 21 |

| Combined Non-Performing Assets | 2Q25 UPB | 2Q25 # | 3Q25 UPB | 3Q25 # | 4Q25 UPB | 4Q25 # | 1Q26 UPB | 1Q26 # |
|---|---|---|---|---|---|---|---|---|
| **Beginning Balance** | $ 956,069 | 41 | $ 893,886 | 37 | $ 1,220,597 | 49 | $ 1,116,386 | 48 |
| **Activity** | (62,183) | (4) | 326,711 | 12 | (104,211) | (1) | (114,170) | (8) |
| **Ending Balance** | $ 893,886 | 37 | $ 1,220,597 | 49 | $ 1,116,386 | 48 | $ 1,002,216 | 40 |
| **% of Total Portfolio** | 7.5% | | 10.0% | | 8.9% | | 8.0% | |

Source: Company filings (As of March 31, 2026)
1) Includes $84.3M of reserves related to REO assets

15

* * *

## Arbor has Clear Visibility to Resolution on Non-Performing Assets

**Projected Resolution for $480M of Delinquencies**

- **$200M - $300M** is expected to be resolved from 2Q26 – 3Q26
- Potential to rectify another ~**$100M** in 4Q26
- Throughout the remainder of 2026, Arbor is projected to take back ~**$100M** of non-performing loans as REO assets, as well as work through any remaining delinquencies
- This aggressive resolution pace will resolve nearly all of these delinquencies by year end[1]

**Projected Resolution for $520M of REO Assets**

- **~$50M - $75M** of delinquent loans (noted above) taken back as REO in 2Q26
- Additionally, from 3Q26 – 4Q26, Arbor is projected to take back between **$25M - $50M** of non-performing loans (noted above) as REO assets
- We expect to resolve between **$300M - $400M** of these assets during the year, which will bring the REO balance down to **$250M - $300M** by the end of 2026

**Aggressive resolution strategy will go a long way towards improving Arbor's run rate of net interest income as these non-performing assets are dragging earnings down by $75M - $95M annually, or ~$0.35 - $0.45 per share**

Source: Company filings (As of March 31, 2026)
1) Assumes no new delinquencies

31. On May 8, 2026, the Company submitted its quarterly report for the period ended March 31, 2026 on a Form 10-Q filed with the SEC, affirming the previously reported financial results. The report stated the following regarding the Company's non-performing loans, and its other non-accrual loans, as follows in relevant part:

> ***Non-performing Loans***
>
> Loans are generally classified as non-performing once the contractual payments exceed 60 days past due, unless past due payments due to us are in the process of being collected or otherwise reasonably certain to be received in the immediate future. Income from non-performing loans is generally recognized on a cash basis when it is received. Full income recognition will resume when the loan becomes contractually current, and performance has recommenced. At March 31, 2026, 19 loans with an aggregate net carrying value of $460.0 million, net of related loan loss reserves of $16.1 million, were classified as non-performing and, at December 31, 2025, 26 loans with an aggregate net carrying value of $545.0 million, net of related loan loss reserves of $10.2 million, were classified as non-performing.
>
> A summary of our non-performing loans by asset class is as follows ($ in thousands):

| | March 31, 2026 | | December 31, 2025 | |
|---|---|---|---|---|
| | UPB | Carrying Value | UPB | Carrying Value |
| Multifamily | $ 479,219 | $ 473,919 | $ 566,906 | $ 553,016 |
| Commercial | 1,700 | 1,700 | 1,700 | 1,700 |
| Retail | 531 | 531 | 531 | 531 |
| Total | $ 481,450 | $ 476,150 | $ 569,137 | $ 555,247 |

At March 31, 2026 and December 31, 2025, we had loans with a UPB of $20.8 million and $237.0 million, respectively, and accrued interest of $0.2 million and $6.6 million, respectively, that were greater than 60 days past due and classified as performing loans. All past due payments on these loans have been subsequently collected.

***Other Non-accrual Loans***

In this challenging economic environment, we have been experiencing late and partial payments on certain loans in our structured portfolio. Therefore, for loans that are 60 days past due or less, if we have determined there is reasonable doubt about collectability of all principal and interest, we classify those loans as non-accrual and recognize interest income only when cash is received. The table below is a summary of those loans that are 60 days past due or less that we have classified as non-accrual, and changes to those loans for the periods presented ($ in thousands).

32. On July 31, 2026, Arbor Realty issued a press release announcing its earnings for the quarter ended June 30, 2026. The press release touted the Company's financial results, including the Company's loan and investment portfolio's unpaid principal balance and the number of non-performing loans. Specifically, the press release stated as follows in relevant part:

**Company Highlights:**

•GAAP net loss of $(37.3) million, or $(0.20) per diluted common share

•Distributable earnings1 of $0.10 per diluted common share, or $0.15 excluding $9.6 million of net realized losses from the resolution of certain legacy assets

•Generated ~$500 million of additional liquidity through two recent capital markets transactions with a portion of the proceeds used to:

◦Repurchase $114.3 million of common stock at $5.42 per share, or 49% of book value in July 2026

◦Redeem $270 million of senior notes in July 2026

•Repurchased an additional $20.8 million of stock at $5.85 per share, or 53% of book value

> •Declares cash dividend on common stock of $0.17 per share
>
> •Servicing portfolio of ~$36.70 billion, agency loan originations of $1.08 billion
>
> •Structured loan portfolio of ~$12.11 billion, originations of $689.0 million and runoff of $539.7 million
>
> * * *
>
> At June 30, 2026, the loan and investment portfolio's unpaid principal balance ("UPB"), excluding loan loss reserves, was $12.11 billion, with a weighted average interest rate of 6.50%, compared to $12.00 billion and 6.49% at March 31, 2026. Including certain fees earned and costs associated with the loan and investment portfolio, the weighted average interest rate was 6.95% at June 30, 2026, compared to 7.03% at March 31, 2026.
>
> * * *
>
> During the second quarter of 2026, the Company recorded a $38.2 million net provision for loan losses associated with CECL. At June 30, 2026, the Company's total allowance for loan losses was $163.4 million. The Company had nineteen non-performing loans with a UPB of $428.8 million, before related loan loss reserves of $31.1 million, compared to nineteen non-performing loans with a UPB of $481.5 million, before loan loss reserves of $16.1 million at March 31, 2026. In addition, the Company recorded $13.6 million of impairments on two real estate owned properties.
>
> In addition, at June 30, 2026, the Company had three non-accrual loans with a UPB of $94.9 million that were less than 60 days past due, compared to none at March 31, 2026.

33. On July 31, 2026, the Company submitted its quarterly report for the period ended June 30, 2026 on a Form 10-Q filed with the SEC, affirming the previously reported financial results. The report stated the following regarding the Company's non-performing loans, and its other non-accrual loans, as follows in relevant part:

> ***Non-performing Loans***
>
> Loans are generally classified as non-performing once the contractual payments exceed 60 days past due, unless past due payments due to us are in the process of being collected or otherwise reasonably certain to be received in the immediate future. Income from non-performing loans is generally recognized on a cash basis when it is received. Full income recognition will resume when the loan becomes contractually current, and performance has recommenced. At June 30, 2026, 19 loans with an aggregate net carrying value of $396.4 million, net of related loan

loss reserves of $31.1 million, were classified as non-performing and, at December 31, 2025, 26 loans with an aggregate net carrying value of $545.0 million, net of related loan loss reserves of $10.2 million, were classified as non-performing.

A summary of our non-performing loans by asset class is as follows ($ in thousands):

| | June 30, 2026 | | December 31, 2025 | |
|---|---|---|---|---|
| | UPB | Carrying Value | UPB | Carrying Value |
| Multifamily | $ 426,614 | $ 425,272 | $ 566,906 | $ 553,016 |
| Commercial | 1,700 | 1,700 | 1,700 | 1,700 |
| Retail | 531 | 531 | 531 | 531 |
| Total | $ 428,845 | $ 427,503 | $ 569,137 | $ 555,247 |

At June 30, 2026 and December 31, 2025, we had loans with a UPB of $91.2 million and $237.0 million, respectively, and accrued interest of $1.9 million and $6.6 million, respectively, that were greater than 60 days past due and classified as performing loans. All past due payments on these loans have been subsequently collected, except for a loan that was greater than 60 days past due at June 30, 2026 with a UPB of $58.6 million and accrued interest of $1.6 million. We are currently in the process of modifying that loan and expect to collect the accrued interest in August 2026.

***Other Non-accrual Loans***

In this challenging economic environment, we have been experiencing late and partial payments on certain loans in our structured portfolio. Therefore, for loans that are 60 days past due or less, if we have determined there is reasonable doubt about collectability of all principal and interest, we classify those loans as non-accrual and recognize interest income only when cash is received.

34. On August 3, 2026, the Company published its second quarter 2026 investor presentation. The investor presentation touted that Arbor "***is Singularly Focused on Accelerating the Resolution of Non-Performing Assets***" and "***[c]ontinue[s] to make progress by resolving more non-interest earning assets versus new defaults***." The investor presentation further reiterated that "***Arbor Has a Defined Path to Resolve Nearly All Existing Delinquencies and Reduce REO Substantially by Year-End***" and reiterated the REO "year-end 2026 target [of] ~$300M." Specifically, the investor presentation stated as follows, in relevant part:

## Arbor is Singularly Focused on Accelerating the Resolution of Non-Performing Assets

**Continue to make progress by resolving more non-interest earning assets versus new defaults. In 1H26, non-performing assets are down 4% as Arbor accelerates the resolution process**

**Non-Performing Assets - 2025-2026**
($ in 000s)

| Delinquency Rollforward | 3Q25 UPB | 3Q25 # | 4Q25 UPB | 4Q25 # | 1Q26 UPB | 1Q26 # | 2Q26 UPB | 2Q26 # |
|---|---|---|---|---|---|---|---|---|
| Beginning Balance | $ 528,700 | 22 | $ 749,250 | 33 | $ 617,448 | 29 | $ 481,450 | 19 |
| Additions | 435,103 | 18 | 270,710 | 9 | 197,775 | 5 | 142,833 | 7 |
| Transfer to REO | (122,475) | (2) | (88,168) | (4) | (58,925) | (3) | (100,518) | (4) |
| Modified/Payoffs | (92,078) | (5) | (314,344) | (9) | (274,848) | (12) | - | - |
| Ending Balance | $ 749,250 | 33 | $ 617,448 | 29 | $ 481,450 | 19 | $ 523,765 | 22 |

| REO Rollforward | 3Q25 Carrying Value | 3Q25 # | 4Q25 Carrying Value | 4Q25 # | 1Q26 Carrying Value | 1Q26 # | 2Q26 Carrying Value | 2Q26 # |
|---|---|---|---|---|---|---|---|---|
| Beginning Balance | $ 365,186 | 15 | $ 471,347 | 16 | $ 498,938 | 19 | $ 520,766 | 21 |
| Transfer to REO | 107,556 | 2 | 72,868 | 4 | 59,017 | 3 | 111,269 | 5 |
| Sold | (10,063) | (1) | (28,814) | (1) | (34,768) | (1) | (78,995) | (3) |
| Impairment | - | | (20,500) | | (12,500) | | (13,650) | |
| Other (CapEx / Depreciation) | 8,668 | | 4,037 | | 10,079 | | 6,556 | |
| Ending Balance | $ 471,347 | 16 | $ 498,938 | 19 | $ 520,766 | 21 | $ 545,946 [1] | 23 |

| Combined Non-Performing Assets | 3Q25 UPB | 3Q25 # | 4Q25 UPB | 4Q25 # | 1Q26 UPB | 1Q26 # | 2Q26 UPB | 2Q26 # |
|---|---|---|---|---|---|---|---|---|
| **Beginning Balance** | **$ 893,886** | **37** | **$ 1,220,597** | **49** | **$ 1,116,386** | **48** | **$ 1,002,216** | **40** |
| **Activity** | **326,711** | **12** | **(104,211)** | **(1)** | **(114,170)** | **(8)** | **67,495** | **5** |
| **Ending Balance** | **$ 1,220,597** | **49** | **$ 1,116,386** | **48** | **$ 1,002,216** | **40** | **$ 1,069,711** | **45** |
| **% of Total Portfolio** | **10.0%** | | **8.9%** | | **8.0%** | | **8.5%** | |

Source: Company filings (As of June 30, 2026)
1) Includes $97.9M of reserves related to REO assets

15

* * *




35. The above statements identified in ¶¶27-28, 30-34 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) the loans Defendants described as "ring-fenced" were not contained, but continued to generate new delinquencies faster than the Company could resolve them; (2) the Company lacked a reasonable basis to represent that the Company would resolve nearly all existing delinquencies by year-end 2026; (3) the Company could not reasonably reduce its REO balance at the pace predicted by year-end 2026; (4) the resulting losses, reserves, and impairments threatened the Company's earnings and its ability to sustain its dividend; and (5) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

**Disclosures at the End of the Class Period**

36. The truth fully emerged on October 30, 2026, before the market opened, when Arbor Realty issued a press release announcing its financial results for the third quarter of 2026. Among other things, the Company reported a GAAP net loss of $(85.4) million, or $(0.51) per diluted common share, a distributable loss of $(0.04) per diluted common share, and that the Company had suspended its quarterly cash dividend "during this challenging environment to preserve capital and maintain financial flexibility." The Company further reported that, as of September 30, 2026, the loan and investment portfolio's UPB, excluding loan loss reserves, was $12.00 billion. Finally, the Company revealed it had "***thirty-two non-performing loans with a UPB of $647.6 million, before related loan loss reserves of $41.9 million, compared to nineteen non-performing loans with a UPB of $428.8 million, before loan loss reserves of $31.1 million at June 30, 2026***."

37. On the same date, the Company held an earnings call regarding its third quarter 2026 results. During the earnings call, Defendant Kaufman disclosed the Company "***ended the third quarter with approximately $750 million of delinquencies and around $500 million of REO assets for total nonperforming assets of roughly $1.25 billion, which is up around $200 million from last quarter's numbers.***" Specifically, during the earnings call, Defendant Kaufman stated as follows, in relevant part:

> We are still dealing with the same universe of legacy loans that we have ring-fenced and remain confident in our ability to continue to make progress and reduce this exposure significantly over the next 4 to 6 quarters. ***We ended the third quarter with approximately $750 million of delinquencies and around $500 million of REO assets for total nonperforming assets of roughly $1.25 billion, which is up around $200 million from last quarter's numbers*** as a result of the significant increase in rates, which again has accelerated delinquencies and delayed the timing of the resolution of certain assets.

38. On this news, Arbor Realty stock fell $0.88, or 29.14%, to close at $2.14 on October 30, 2026, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

39. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Arbor Realty securities between February 27, 2026 and October 30, 2026, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

40. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Arbor Realty's shares actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of Arbor Realty shares were traded publicly during the Class Period on the NYSE. Record owners and other members of the Class may be identified from records maintained by Arbor Realty or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

41. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

42. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

43. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Arbor Realty; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

44. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

45. The market for Arbor Realty's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose, Arbor Realty's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Arbor Realty's securities relying upon the integrity of the market price of the Company's securities and market information relating to Arbor Realty, and have been damaged thereby.

46. During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Arbor Realty's securities, by publicly issuing false and/or misleading

statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Arbor Realty's business, operations, and prospects as alleged herein.

47. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Arbor Realty's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

48. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

49. During the Class Period, Plaintiff and the Class purchased Arbor Realty's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

50. As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Arbor Realty, their control over, and/or receipt and/or modification of Arbor Realty's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Arbor Realty, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

51. The market for Arbor Realty's securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, Arbor Realty's securities traded at artificially inflated prices during the Class Period. On March 4, 2026, the Company's share price closed at a Class Period high of $8.85 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Arbor Realty's securities and market information relating to Arbor Realty, and have been damaged thereby.

52. During the Class Period, the artificial inflation of Arbor Realty's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the

Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Arbor Realty's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Arbor Realty and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

53. At all relevant times, the market for Arbor Realty's securities was an efficient market for the following reasons, among others:

(a) Arbor Realty shares met the requirements for listing, and were listed and actively traded on the NYSE, a highly efficient and automated market;

(b) As a regulated issuer, Arbor Realty filed periodic public reports with the SEC and/or the NYSE;

(c) Arbor Realty regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d) Arbor Realty was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

54. As a result of the foregoing, the market for Arbor Realty's securities promptly digested current information regarding Arbor Realty from all publicly available sources and reflected such information in Arbor Realty's share price. Under these circumstances, all purchasers of Arbor Realty's securities during the Class Period suffered similar injury through their purchase of Arbor Realty's securities at artificially inflated prices and a presumption of reliance applies.

55. A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

56. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-

looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Arbor Realty who knew that the statement was false when made.

## FIRST CLAIM

**Violation of Section 10(b) of The Exchange Act and**

**Rule 10b-5 Promulgated Thereunder**

**Against All Defendants**

57. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

58. During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Arbor Realty's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

59. Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Arbor Realty's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

60. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Arbor Realty's financial well-being and prospects, as specified herein.

61. Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Arbor Realty's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Arbor Realty and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

62. Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances,

operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

63. Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Arbor Realty's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

64. As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Arbor Realty's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trade, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Arbor Realty's securities during the Class Period at artificially high prices and were damaged thereby.

65. At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Arbor Realty was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Arbor Realty securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

66. By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

67. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**SECOND CLAIM**

**Violation of Section 20(a) of The Exchange Act**

**Against the Individual Defendants**

68. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

69. The Individual Defendants acted as controlling persons of Arbor Realty within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various

statements which Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

70. In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

71. As set forth above, Arbor Realty and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b) Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) Such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: November 9, 2026

**GLANCY PRONGAY WOLKE & ROTTER LLP**

By: *<u>/s/ Rebecca Dawson</u>*
Rebecca Dawson
745 5th Avenue, 5th Floor
New York, NY 10151
Telephone: (213) 521-8007
Facsimile: (212) 884-0988
Email: rdawson@glancylaw.com

Robert V. Prongay
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
clinehan@glancylaw.com

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
2121 Avenue of the Stars, Suite 800
Century City, CA 90067
Telephone: (310) 914-5007

*Counsel for Plaintiff Todd Greenbaum*

# SWORN CERTIFICATION OF PLAINTIFF

## ARBOR REALTY TRUST, INC. SECURITIES LITIGATION

I, Todd Greenbaum, certify that:

1. I have reviewed the Complaint, adopt its allegations, and authorize the filing of the Complaint on my behalf.

2. I did not purchase the Arbor Realty Trust, Inc. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this federal securities laws.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in Arbor Realty Trust, Inc. securities during the Class Period set forth in the Complaint are as follows:

   (See attached transactions)

5. I have not sought to serve, nor served, as a representative party on behalf of a class in any action under the federal securities laws (15 U.S. Code, Chapter 2B; and 15 U.S. Code, Chapter 2A, Subchapter I) during the last three years.

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

11/4/2026

Date

Todd Greenbaum

**Todd Greenbaum's Transactions in Arbor Realty Trust, Inc. (ABR)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 6/5/2026 | Bought | 700 | $5.32 |